IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| GIV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:07CV067-HEH |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Defendants' Motion to Dismiss)**

This matter is before the Court on Defendant International Business Machines Corporation's ("IBM") Motion to Dismiss and Defendant Lenovo (United States) Inc.'s Motion to Dismiss, both filed on March 13, 2007. Defendants Lenovo and Kokoku Intech Co., Ltd. join in IBM's motion. In addition, Plaintiff GIV, LLC has filed a motion for leave to file a sur-reply. The parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Defendants' motions and deny Plaintiff's motion as unnecessary.

**I.  Background**

This dispute arises from Plaintiff GIV's claim that it holds valid patents on an improved cushion, or "SofPoint Cap," for keyboard control sticks used to direct the cursor on laptops, including those manufactured and marketed by Defendants IBM, Lenovo, Kokoku, and Compu-

Lock, Inc.[1]  Beginning in February 1998, GIV approached IBM to promote its SofPoint Cap, however, IBM declined to enter into any contractual arrangement with GIV.  Instead, GIV claims that IBM purchased infringing caps from Kokoku and contracted with Compu-Lock to market and sell infringing caps as after-market parts.  On May 1, 2005, IBM sold its Personal Computing Division to Lenovo, and according to Plaintiff, Lenovo continues to market an infringing product.  On January 31, 2007, GIV brought this action, alleging patent infringement (Counts I-V), unjust enrichment (Count VI), intentional and negligent misrepresentation (Counts VII-VIII), and civil conspiracy (Count IX).  Defendants counterclaimed seeking a declaratory judgment of non-infringement and invalidity of the patents-in-suit.[2]  Defendants now seek dismissal of GIV's state law claims, Counts VI-IX, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

The following is a summary of the facts alleged in the Complaint.  On September 26, 1996, GIV filed its first U.S. patent application for the SofPoint Cap.[3]  GIV first approached IBM in February 1998 to promote the SofPoint Cap.  Based on IBM's express and implied promises to either purchase SofPoint Caps or hire GIV to design new caps, GIV shared certain proprietary information, know-how, and intellectual property regarding the SofPoint Cap.  Shortly thereafter, IBM declined to enter into an agreement and began using and selling

---

[1] The patents-in-suit are United States Patent Nos. 5,889,508 ("the '508 patent"); 6,140,998 ("the '998 patent"); 6,606,084 ("the '084 patent"); 6,621,485 ("the '485 patent"); and 6,724,369 ("the '369 patent").

[2] Default was entered against Defendant Compu-Lock on April 6, 2007, for failure to appear, respond, or otherwise defend against this action.

[3] Mark R. Slotta is a member of GIV, GIV's principal designer, and the sole inventor named in the patents-in-suit.  Slotta has assigned all rights, title, and interest in the patents-in-suit to GIV.  In this opinion, "GIV" refers to both Slotta and GIV.

infringing caps, which Defendants continue to manufacture, import, and sell.  The United States Patent and Trademark Office ("USPTO") issued the '508 and '998 patents on March 30, 1999, and October 31, 2000, respectively.

In March 2003, while continuing to work with IBM and despite IBM's assurances otherwise, GIV learned that IBM had collaborated with Kokoku to begin marketing and selling infringing caps.  GIV notified IBM that it considered the Kokoku caps to be infringing and made another request to IBM to enter into a formal agreement, however, IBM again declined.  In the year that followed, the USPTO granted the '084, '485, and '369 patents, on August 12, 2003, September 16, 2003, and April 20, 2004, respectively.  After the April 20, 2004 grant of the '369 patent, GIV again advised IBM of the patents, but Plaintiff alleges that IBM continued its infringement.

On May 1, 2005, IBM completed the sale of its Personal Computing Division to Lenovo.  IBM employees dealing with GIV became employees of Lenovo.  Lenovo had knowledge of GIV's patents, but Plaintiff contends that they continued in the infringing activity.  At some point, IBM contracted with Compu-Lock to market and sell infringing caps as after-market parts.[4]  Compu-Lock also had knowledge of GIV's patents, but began selling and presently sells infringing caps.  The Complaint alleges that Defendants IBM, Lenovo, Kokoku, and Compu-Lock continue to manufacture, market, and sell the infringing caps today.

GIV filed the present action on January 31, 2007.  Defendants IBM, Lenovo, and Kokoku seek dismissal of the state law claims on several grounds.  Defendants argue that the state law claims are barred by the applicable statute of limitations, the misrepresentation claims are not

---

[4] It is not clear from the Complaint when IBM entered a relationship with Compu-Lock.

pled with the particularity required by Rule 9(b), and the conspiracy claim fails to state a claim for which relief can be granted. The Court will consider each of these arguments.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts because of their res judicata effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Martin*, 980 F.2d at 952 (internal quotations omitted). The Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Id.*

## III. Analysis

**A. Unjust Enrichment**

A cause of action for unjust enrichment rests upon the principle that "a man shall not be allowed to enrich himself unjustly at the expense of another." *Kern v. Freed Co.*, 224 Va. 678, 681, 299 S.E.2d 363, 365 (1983) (internal quotations omitted). To establish an unjust enrichment claim, the plaintiff must allege three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Tao of*

*Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004). The parties agree that an action for unjust enrichment must be brought within three years of accrual. *See* Va. Code Ann. § 8.01-246(4); *Belcher v. Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989). An unjust enrichment action accrues when the unjust enrichment actually occurs, i.e., when the expected compensation is not paid, not when a party knew or should have known of the unjust enrichment. *Tao of Sys. Integration, Inc.*, 299 F. Supp. 2d at 576; *Primrose Dev. Corp. v. Benchmark Acquisition Fund I, L.P.*, 47 Va. Cir. 296, 298 (Va. Cir. Ct. 1998); *Tsui v. Sobral*, 39 Va. Cir. 486, 489 (Va. Cir. Ct. 1996).

Given the three-year statute of limitations, any unjust enrichment accruing before January 31, 2004, is barred. GIV claims that Defendants have been unjustly enriched by the misappropriation and use of GIV's intellectual property and know-how. Taking GIV's allegations as true, IBM's misappropriation occurred, if at all, in February 1998 or "sometime thereafter,"[5] when IBM received and began using GIV's intellectual property and know-how without paying GIV for its value. *See Tao of Sys. Integration, Inc.*, 299 F. Supp. 2d at 576.

GIV argues that its "continued negotiations" with IBM did not make the enrichment "unjust" until February 2005 when IBM "finally admitted . . . that they believed their use of GIV's technology to be non-infringing." (Pl.'s Opp. 9–10.) Besides the fact that no allegations in the Complaint support such an argument, even if continued negotiations did occur through February 2005, such negotiations do not extend the accrual date in this case. Mere negotiations

---

[5] The Complaint asserts that GIV contacted IBM "[o]n or about February 1998" to promote its SofPoint caps, and "[s]ometime thereafter" shared with IBM its information and know-how. (Compl. ¶ 27.) It is unclear from the Complaint how long after February 1998 the information was shared, but it was apparently before March 2003. (*See* Compl. ¶¶ 27–31.)

do not postpone when unjust enrichment occurs. Otherwise, a party could indefinitely extend the accrual date for the statute of limitations by simply making periodic requests of another party to enter an agreement. The more prudent measure would be to obtain a waiver of the limitations defense during the negotiations. *See Birdsall, Inc. v. Tramore Trading Co.*, 771 F. Supp. 1193, 1198 (S.D. Fla. 1991).

Even if the unjust enrichment claim accrued before January 31, 2004, GIV argues that the doctrine of equitable estoppel prevents Defendants from raising the statute of limitations defense. The doctrine of equitable estoppel generally provides that when one person, by his statements or conduct, has induced another, who relies upon them in good faith and acts, "the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby." *Am. Mut. Liability Ins. Co. v. Hamilton*, 145 Va. 391, 407, 135 S.E. 21, 25 (1926) (internal quotations omitted). The Supreme Court of Virginia noted:

> In order to constitute an estoppel: 1. There must have been a representation or concealment of material facts. 2. The representation or concealment must have been with knowledge of the true state of facts, unless the party making it was bound to know the facts, or his ignorance of them was due to gross negligence. 3. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. 4. It must have been made with the intention that the other party should act on it; but the place of intent will be supplied by gross and culpable negligence on the party sought to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. 5. The representation or concealment must be proved to have been the inducement to the action of the other party. 6. The party claiming the estoppel must have been misled to his injury.

*Id.* at 407–08, 135 S.E. at 25–26 (internal quotations omitted).

Equitable estoppel does not apply in this case. GIV was not ignorant of the facts to

support its claim of unjust enrichment. Based on the allegations in its Complaint, GIV was aware sometime between 1998 and 2003 that IBM accepted the information and know-how and began using and selling the alleged infringing caps without payment to GIV, and in fact, entered an agreement with another manufacturer to supply the caps. GIV admits that IBM explicitly declined to enter an agreement on multiple occasions before January 31, 2004. Finally, GIV alleges no facts indicating that Defendants somehow deprived or obstructed GIV from filing and prosecuting its action in a timely fashion. Merely alleging facts that may have given GIV a reasonable hope for a non-litigious ending to its negotiations with IBM does not support the application of equitable estoppel. As mentioned above, obtaining a waiver of the statute of limitations defense during negotiations is the more prudent measure.

Even when reading the Complaint in the light most favorable to GIV, the alleged unjust enrichment accrued before January 31, 2004, and the doctrine of equitable estoppel does not apply. Therefore, GIV's unjust enrichment claim is barred.[6] Accordingly, the claim will be dismissed.

## B. Intentional and Negligent Misrepresentation

The elements of an intentional misrepresentation, or actual fraud, claim are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to

---

[6] The Court also notes that four of the five patents-in-suit issued prior to January 31, 2004, and the fifth patent issued a few months later on April 20, 2004. The proper claim for the misappropriation of patented technology is patent infringement, not unjust enrichment. Unjust enrichment claims based on state law are generally preempted by federal patent law after the patent issues, unless the patentee can show the infringer obtained an incremental benefit from the information it received before the patent issued over and above what the public received from the published patent. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1380 (Fed. Cir. 2005). GIV has alleged no such incremental benefit in this case.

mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 165, 576 S.E.2d 504, 506 (2003). The elements are the same for negligent misrepresentation, or constructive fraud, except that "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999); *see Kitchen v. Throckmorton*, 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982). A two-year statute of limitations applies to claims of misrepresentation. *See* Va. Code Ann. § 8.01-243. Such claims accrue when the "misrepresentation . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249(1).

"The language 'by the exercise of due diligence reasonably should have been discovered,' as used in Code § 8.01-249, means '[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.'" *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990) (quoting *Black's Law Dictionary* 411 (rev. 5th ed. 1979)). "Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case." *Id.* at 145, 393 S.E.2d at 397.

The Court can immediately dispense with GIV's claim of negligent misrepresentation. "When [a party] makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an *actual* fraud." *Blair Const., Inc. v. Weatherford*, 253 Va. 343, 348, 485 S.E.2d 137, 139 (1997). Such a misrepresentation, however, is not actionable as a *constructive* fraud. *See id.* at 346–48,

8

485 S.E.2d at 138–40. GIV contends that IBM misrepresented to GIV that they would enter into an agreement to purchase SofPoint caps or hire GIV as a consultant in order to induce GIV to share its intellectual property and know-how. Therefore, while GIV's allegations may be actionable as an actual fraud or intentional misrepresentation, they are not actionable as a constructive fraud or negligent misrepresentation. GIV's negligent misrepresentation claim will be dismissed. Because the question of whether due diligence depends upon the facts of each case, however, the Court finds that it would be premature at this stage to grant a dismissal of GIV's intentional misrepresentation claim based on the statute of limitations.

Defendants also argue that GIV has failed to plead its fraud claim with the particularity required by Rule 9(b). Rule 9(b) provides that, "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

GIV alleges no specific misrepresentations, intentional or otherwise, that were made by Defendants Lenovo or Kokoku, and therefore, the Court will dismiss the intentional misrepresentation claim as to them. GIV does allege a misrepresentation made by IBM, the nature of which appears to be alleged sufficiently. The Complaint, however, fails to provide the specific time and place of the alleged misrepresentation. It apparently occurred sometime between February 1998 and March 2003, *see supra* note 5, and there is no indication of where.

Nor does the Complaint allege who at IBM made the false representation. Taken all together, the Court finds that GIV has not pled its claim of intentional misrepresentation sufficiently to satisfy Rule 9(b), and therefore, the claim will be dismissed without prejudice as to IBM

**C. Civil Conspiracy**

Lastly, GIV asserts a claim for civil conspiracy, alleging that "Defendants worked together to misappropriate Plaintiff's proprietary intellectual property, knowledge, experience, and know-how about the pointing stick caps for their own benefit." (Compl. ¶ 91.) "For conspiracy claim to be viable, the plaintiff must allege all of the elements of the underlying claim in order to make a *prima facie* case for conspiracy to commit that claim." *Almy v. Grisham*, 55 Va. Cir. 401, 2001 WL 34037324, *3 (Va. Cir. Ct. July 20, 2001) (citing *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892 (1997)). Even though a conspiracy and its constituent substantive claim turn on independent legal axes, the former cannot exist without proof of the latter. Because the underlying state law claims, on which GIV's conspiracy claim is based, will be dismissed, GIV's conspiracy claim must also be dismissed.[7]

## IV. Conclusion

For the reasons stated above, Defendants' motions are granted. GIV's claims of unjust enrichment, negligent misrepresentation, and civil conspiracy will be dismissed with prejudice as to Defendants IBM, Lenovo, and Kokoku. GIV's claim of intentional misrepresentation will be dismissed with prejudice as to Defendants Lenovo and Kokoku and will be dismissed without prejudice as to IBM. Accordingly, Plaintiff's motion for leave to file a sur-reply will be denied

---

[7] GIV attempts in its Opposition to base its conspiracy claim on the patent infringement claim, *see* Pl.'s Opp. 10, however, there can be no cause of action for conspiracy to infringe a patent. *See Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed.. Cir. 2004).

as unnecessary.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this    24th    day of    April 2007   .
Richmond, VA